IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| J.R. Simplot Company,<br>a Nevada corporation,<br>d/b/a/ Simplot Grower Solutions,<br><br>Plaintiff,<br><br>-vs-<br><br>Greg Campbell, Thomas Campbell, and<br>William Campbell, individually<br>and d/b/a/ Tri-Campbell Farms,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2:06cv7<br><br>**Memorandum Opinion Partially Granting Plaintiff's Motion for Partial Summary Judgment** |

Before the court is Plaintiff's motion for Summary Judgment on counts three and four of Defendants' counterclaim. Count three is an equitable claim based on a theory of unjust enrichment. Count four is a claim based on unfair trade practices. The court finds that the count three claim lacks merit as a matter of law because it fails to establish either an enrichment on the part of Plaintiff or the basis for an implied contract. Plaintiff's motion for Partial Summary Judgment as to count three is granted. The court concludes that material issues of fact exist which require a trial on the merits as to whether a claim exists under Chapter § 51-15 of the North Dakota Century Code for Unlawful Sales or Advertising Practices. To the extent that Chapter 51-15 has application to the unjust enrichment claim in count three, the claim is dismissed.

**Procedural Background**

J. R. Simplot Company (hereafter Simplot) sued Greg Campbell, Thomas Campbell and William Campbell, individually and as general partners in Tri-Campbell Farms, a North Dakota general partnership. Docket 1. (Hereafter Tri-Campbell). This suit was brought in North Dakota state district court and removed to this court by Tri-Campbell. Docket 1. Tri-Campbell answered and counterclaimed including counts three and four which are the subject of Simplot's present motion. Docket 2. Simplot filed a answer to counterclaim. Docket 5.

Simplot's claim is for money due it for the sale of various agricultural supplies sold to Tri-Campbell. Docket 1. Simplot relies on a written "Commercial Sales Agreement" and two "Agricultural Supplier's Lien/Notices". Docket 1. Tri-Campbell counterclaims for breach of contract and breach of the covenant of good faith and fair dealing for refusal by Simplot of delivery and the subsequent loss of potatoes on a separate written contract styled "Potato Growing Agreement". Docket 2. Tri-Campbell alleges in count one of its counterclaim that Simplot breached the Potato Growing Agreement by refusing to accept delivery of 29,268.11 hundred weight of potatoes and that by so doing also breached the implied covenant of good faith and fair dealing complained of in count two. Docket 2.

Tri-Campbell also seeks relief alleging Simplot has been unjustly enriched at Tri-Campbell's expense for not contracting with Tri-Campbell's non-party farm operators to purchase Shepody potatoes. Tri-Campbell asserts that it purchased the farm inputs from Simplot to raise Shepody seed potatoes and other crops. Tri-Campbell planted and harvested the Shepody seed potatoes anticipating a sale of the seed potatoes to various non-party potato farmers. Docket 2. Simplot later declined to enter purchase contracts for the Shepody potatoes

with the non-party farmers which left Tri-Campbell without a market for its seed potatoes that they had already planted or harvested. Docket 2. Finally, Tri-Campbell alleges that by rejecting deliveries of potatoes and by selling the seed potatoes and other agricultural inputs and then by not contracting for the purchase of Shepody potatoes from the various non-party farmers, Simplot violated North Dakota's Unlawful Sales or Advertising Practices Act. N.D. Cent. Code 51-15-01 et. seq. Docket 2.

Simplot's motion seeks partial summary judgment on count three (unjust enrichment) and count four (unfair trade practices). Docket 13. Simplot's claim for money due on its Commercial Sales Agreement and Tri-Campbell's claim for breach of the Potato Growing Agreement are not the subject of this motion and remain for trial on the merits. In this opinion the court relies on the "Undisputed Facts" filed by Simplot (Docket 15) and agreed to by Tri-Campbell (Docket 18), those facts admitted in the pleadings and undisputed deposition testimony.

**The Parties**

Simplot is a Nevada corporation that is authorized to and is in fact conducting business in North Dakota. Docket 15, ¶ 1. As part of its business Simplot sells agricultural inputs to North Dakota farmers, including Tri-Campbell. Docket 15, ¶ 4. Simplot also buys potatoes from North Dakota farmers, including Tri-Campbell, for processing at its Grand Forks, North Dakota potato processing plant. Docket 15, ¶ 39X.

Tri-Campbell is a North Dakota general partnership owned by defendants William Campbell, Greg Campbell and Thomas Campbell. Docket 15, ¶ 6. Tri-Campbell grows potatoes for table stock and grows and sells seed potatoes. Docket 15, ¶ 7. Some of Tri-Campbell's seed

potato sales have historically been to other North Dakota farmers who in turn sold the potatoes grown from the seed potatoes to Simplot for processing into french fries and other potato products. Docket 15, ¶ 13-15. Tri-Campbell also raises and sells other farm products. Docket 15, ¶ 7.

**The Written Agreements**

The Commercial Sales Agreement underlying this case is a one page document signed on April 13, 2004 which references separate sales invoices not before the court. Docket 15, ¶ 8. These invoices were apparently issued each time that agricultural input products were delivered to Tri-Campbell by the Simplot Grower Solutions, a division of Simplot. Docket 15, ¶ 8-9. Tri-Campbell took delivery of agricultural products and services on account from Simplot for use in its farming operation. Docket 15, ¶ 10. On August 25, 2005 and August 26, 2005 Simplot filed two agricultural suppliers' liens to secure payment for the products purchased by Tri-Campbell. Docket 15, ¶ 10. Tri Campbell agrees that $190,930.52 plus interest is owed. Docket 15, ¶ 11. Tri-Campbell continues to store dry beans, potatoes, wheat and soybeans from its 2005 crop and agrees that Simplot has a first priority lien on those crops and proceeds therefrom. Docket 15, ¶ 11. Tri-Campbell Answer, Docket 2, ¶ 9.

Simplot also has a Potato Growing agreement with Tri-Campbell dated April 19, 2004. This agreement calls for Ti-Campbell to grow and deliver 110,000 hundred weight of Shepody potatoes for delivery to Simplot's Grand Forks processing plant. Docket 15 ¶ 39.

The parties have also produced and filed with the court eight representative samples of various seed potato contracts for the purchase of seed potatoes entered into between Tri-Campbell with other farmers who are not parties to this action. Docket 15, ¶ 13. Five of these

contracts excuse performance by the seed potato purchasing farmers if they were unable to procure a potato contract with Simplot. Docket 15, Ex. F. Three of the contracts do not contain such a contingency. Docket 15, Ex. F.

**Undisputed Facts**

For ten years prior to the 2005 growing season Tri-Campbell grew Shepody seed potatoes for sale to other growers in the Red River Valley. Docket 15, ¶ 12, Docket 18, pg 1. Tri-Campbell also grew Shepody potatoes for sale to Simplot at its processing plant in Grand Forks, North Dakota for at least crop year 2004 and apparently for twelve years prior to that. Docket 15, 18 pg. 1. Tri-Campbell grew, harvested and stored Shepody seed potatoes in 2004 for sale to grower who had contracted with Tri-Campbell. Docket 15 ¶ 14. These seed potatoes contracts were with other farmers who anticipated growing dry-land Shepody potatoes for sale to Simplot for french fry production after the end of the 2005 growing season. Docket 15, ¶ 15. The farmers had not yet entered into these potato grower contracts with Simplot. Docket 15, ¶ 15.

In December 2004 Simplot made a decision to reduce the number of dry-land Shepody potato contracts to be entered into in the spring of 2005. Docket 15, Moores Depo. Pg 51-56. Simplot announced this decision in January 2005. Docket 15, Darren White depo. pg. 32. Simplot's stated reason for reducing its contracts for dry-land Shepody potatoes from the Red River Valley is that these potatoes are subject to quality problems not experienced with irrigated potatoes. This fact is disputed by Tri-Campbell. The Simplot decision resulted in a two-thirds reduction in total dry-land Shepody acres with non-party potato farmers. Docket 15, ¶ 23. As a result of this decision, the growers with whom Tri-Campbell had contracted for sale of its

already planted and harvested seed potatoes, had no contracts with Simplot and thus no use for Tri-Campbell's Shepody seed potatoes. Docket 15, ¶ 26.

Tri-Campbell admits that it assumed, when it planted and grew the 2004 seed crop, that Simplot would continue to buy dry-land Shepody potatoes as it had in the past, thus creating a demand by the non-party potato growers for Tri-Campbell's seed potatoes. No actual discussion between Simplot and Tri-Campbell took place about what Simplot's plan for 2005 might be. Docket 15, ¶ 28. Tri-Campbell alleges that Simplot knew Tri-Campbell had planted seed potatoes in 2004 for sale to other farmers for the 2005 crop year, and had also sold agricultural inputs to Tri-Campbell for that seed potato crop and other crops; that this growing and making available for production benefitted Simplot; and that Simplot's failure to give two year prior notice as Frito-Lay, a competitor had done, resulted in losses to Tri-Campbell. Docket 2, ¶ 22-30. Tri-Campbell claims that this resulted in an unjust enrichment to Simplot. Docket 2, ¶ 22-30. Tri-Campbell further asserts that Simplot had a course of dealing with Tri-Campbell and customary trade usage that obligated Simplot to give Tri-Campbell advance notice of its decision to reduce dry- land Shepody potato contracts as had been done by Frito Lay. Docket 2. Such notice, Tri-Campbell contends, was common in the trade and would have prevented Tri-Campbell's losses. Docket 2.

**Analysis**

Simplot is a Nevada corporation with its principal place of business in Boise Idaho. Docket 15, ¶ 1, Docket 2, counterclaim ¶ 1. Tri-Campbell is a North Dakota general partnership, its three general partners are all residents of Walsh County North Dakota. Docket 2, ¶ 2. A general partnership is an unincorporated association and for the purposes of diversity jurisdiction

has the citizenship of each of its members. Safeco Ins. v. City of White House, 36 F.3d 540, 545 (6th Cir. 1994). Thus complete diversity of citizenship exists and this court has jurisdiction under 28 U.S.C. § 1332.

In diversity cases the district court applies the substantive law of the state in which it is located. Hammonds v. Hartford Fire Ins. Co., ___F3d___, (2007 WL 2536460 (8th Cir. 2007). Whether there is a contract between parties is determined by reference to the state substantive law governing contracts. Alumax Mill Products Inc. v. Congress Financial Corp., 912 F.2d 996, 1007 (8th Cir. 1990), *citing* White Farm Equipment Co. V. Pacific Indemnity Co., 792 F.2d 526, 529 (5rd Cir. 1986). Similarly while a federal court sitting in diversity is not limited to state court equitable remedies, it still enforces substantive equitable rights created by state law. Montgomery Ward & Co. v.Pacific Indemnity Co., 557 F.2d 51, 57 (3rd Cir. 1977). To determine which state's law should apply this court looks to the North Dakota conflicts of law principals. Schwan's Sales Enterprises v. Sig Pack Inc., 476 F3d 594, 596 (8th Cir 2007). The state whose interests are most deeply affected should have its local law apply. Nodak Mutual Insurance Company v. Wamsey, 687 N.W. 2d 226, 230 (N.D. 2004).

From the pleadings it appears that Tri-Campbell's partners are all North Dakota residents, that they contracted with a corporation that had both an agricultural supply business and a processing plant in North Dakota, that the contracts in question were for the production and sale of North Dakota grown farm products for sale and processing in North Dakota. Thus North Dakota has the most interests in this matter and its laws should govern this dispute.

In North Dakota unjust enrichment is an equitable doctrine, applied in the absence of an express or implied contract, to prevent one party from being unjustly enriched at the expense of

the other. Lochthowe v. C.F. Peterson Estate, 692 N.W.2d 120, 124 (N. D. 2005). The elements are proof of an enrichment, an impoverishment, a connection between the enrichment and the impoverishment, absence of justification for either and the absence of a remedy provided by law. Id. The determination of unjust enrichment is a question of law for the court. Id.

Try as it might, the court cannot understand how Tri-Campbell's decision to plant and harvest Shepody seed potatoes in 2004, for sale to other growers in 2005, benefitted Simplot, even indirectly, when it is undisputed that Simplot chose not to buy Shepody dry-land potatoes in the 2005 year. Absent an enrichment a claim for unjust enrichment must fail. Tri-Campbell's decision to plant seed potatoes in prior years benefitted Simplot but even that benefit was indirect. Tri-Campbell contracted with other growers for sale of the seed potatoes. Docket 15, ¶ 13-15. Some of those agreements contained a contingency allowing the grower to avoid the contract if the grower did not receive a contract from Simplot. As the North Dakota Supreme Court has noted "although a third party may benefit from a contractual arrangement between others, respect for that contractual arrangement requires that courts refuse restitution between parties that did not contract with each other." Lochthowe v.C.F. Peterson Estate, 692 N.W.2d 120, 124 (N.D.2005).

In the starkest terms Simplot is simply not retaining any money or benefits that belong to Tri-Campbell. The essential element of an unjust enrichment claim is the receipt of a benefit by the defendant which would be inequitable to retain without paying for its value. Apache Corp. V. MDU Resources Group, Inc., 603 N.W.2d 891, 895 (N.D. 1999). Where no benefit is received by the defendant no claim can lie.

Tri-Campbell concede that it is not seeking relief based on "the amount that Simplot was

unjustly enriched due to its misconduct, but rather is seeking restitution for its own damages occasioned by Simplot's misconduct." Docket 2, ¶ 5. *Emphasis supplied.* That is understandable since the court cannot find any enrichment to Simplot with the arguable exception of the profit to Simplot from the sale of the agricultural inputs to Tri-Campbell. That profit however will not support a claim for unjust enrichment because Simplot sold those products to Tri-Campbell on a written contract. Unjust enrichment is an equitable doctrine applied in the absence of an express or implied contract to prevent a person from being unjustly enriched at the expense of another. Syverson v. Hess, 665 N.W. 2d 23, 27 (N.D. 2003). Because the benefit to Simplot for the sale of the agricultural inputs was the subject of an express written contract no equitable remedy exits. That is, the benefit to Simplot, if any, by virtue of its contract with Tri-Campbell cannot be the basis of the unjust enrichment claim because it is governed by ordinary principles of contract law and a remedy of damages exists at law. Similarly any breach by Simplot of its Potato Growing agreement, including the rejection of potatoes, is the subject to a legal remedy for breach. Thus if Simplot were benefitted by its wrongful rejection of conforming potatoes Tri-Campbell's remedy lies in an action for breach of the growing agreement, not unjust enrichment.

The concepts of unjust enrichment and contract implied by law are interrelated. Estate of Zent, 459 N.W. 2d 795, 798 (N.D. 1990). A contract implied in law, or quasi contract, is not a contract at all but rather an obligation imposed by law to do justice even though it is clear that no promise was ever made or ever intended. Id. In this case, had Tri-Campbell had sufficient bargaining power, it could have contracted with Simplot to protect itself in the event that Simplot's business model changed. Freedom of contract necessarily entails the freedom not to

contract. Blue Cross & Blue Shield Mut. Of Ohio v. Blue Cross& Blue Shield Ass'n, 110 F.3d 318, 333 (6th Cir. 1997). Here Tri-Campbell seeks to have the court imply a contract between sophisticated business entities who knew how to contract and who had, in fact, contracted relating to other matters before the court. The court declines to imply a contract when the parties did not see fit to enter into a contract themselves.

In complicated business transactions involving three parties A may contract with B but not with C, though all are involved in a single project. Apache Corp. MDU Resources Group, Inc., 603 N.W.2d 891, 895 (N.D. 1999) citing, Dan B. Dobbs, The Law of Remedies § 4.1(2). In Apache natural gas producers brought a claim against a gas utility to recover money the utility did not pay to processors after the utility breached its separate contract with the processors. Id. at 893. The utility did not have a contract with the producers. The producers contended that the utility was unjustly enriched at their expense and that they (the gas producers) were third party beneficiaries of the contract between the utility and the processors. Under North Dakota law a third party beneficiary can enforce a contract if it falls within the ambit of N. D. Cent. Code § 9-02-04 which provides "A contract made expressly for the benefit of a third party may be enforced by him at any time before the parties thereto rescind it". To enforce the contract the third party must have been intended by the contracting parties to be benefitted by the contract. Id. Merely because a third party might derive an incidental benefit from the contract not contemplated by the contracting parties does not enable that third party beneficiary to sue to enforce the contract. An accidental or incidental benefit does not give rise to actionable third party beneficiary status. The determination of this third party beneficiary status is an issue of law for the court to determine. Aggrow Oils L.L.C. v. National Union Fire Ins. Co., 420 F.3d

751, 755 (8th Cir. 2005).

The fact that Tri-Campbell benefitted from Simplot's contracts with the non-party growers and as well as the fact that Tri-Campbell was harmed when Simplot did not contract with the growers as it had in the past does not give rise to a claim by Tri-Campbell. As in Apache the parties could have contracted with each other but chose not to do so. Respect for the allocation of risk in the other contracts requires the courts refuse restitution between the parties who did not contract with each other. Id. In this case the parties did not contract with each other and the court should not create a contract for the parties. When the impoverishment results from a valid contractual arrangement made by a party, the result is not contrary to equity. Id. At 895. Tri-Campbell, Simplot and the non-party potato growers were free to contract or not contract with each other. The court will not imply a contract where the parties failed to agree to one.

The court believes that the relief that Tri-Campbell actually seeks could more likely be styled as one for an implied contract, rather than unjust enrichment. That is, Tri-Campbell seeks to have the court imply a contract between Simplot and Tri-Campbell. Contracts are either express or implied. Good Bird v. Twin Buttes School Dist., 733 N.W.2d 601, 606 (N.D. 2007). An express contract is one where the terms are stated in words. Id. An implied contract is either one implied in law or implied in fact. Id. A contract implied in law, also called a quasi contract, is an equitable doctrine based on a constructive contract implied by law to prevent one party from being unjustly enriched at the expense of another. Ritter Laber and Associates Inc. v. Koch Oil Inc. 680 NW2d 634, 642 (N.D. 2004). The doctrine serves as a basis for restitution of the amount the defendant was unjustly enriched at the plaintiff's expense. The court can find no allegation of any amount by which Simplot was enriched by failing to contract with the non

party growers.

Tri-Campbell is really seeking damages for the losses it sustained when Simplot quit buying dry land Shepody potatoes from the non-party growers. Thus the relief Tri Campbell seeks is really to imply a contract in fact. In a contract implied in fact the court attempts to determine from the surrounding circumstances what the parties intended by their actions. Goodbird, 733 NW2d at 605. However to create a contract, even one implied in fact, there must be a mutual intention to create a legal obligation. Id. These intentions must be determined by objective manifestations not the secret intentions of the parties. Id. at 606. Here Tri-Campbell has not shown any facts that prove that Simplot or Tri-Campbell intended to create a legal obligation. The court will not imply a contract where the parties had the opportunity to contract and allocate their risks by agreement but chose not to do so.

Tri-Campbell also alleges that the parties course of dealing and usage in the trade supports a claim against Simplot. Because the dispute concerns growing or harvested crops this dispute is governed in part by the provisions of the Uniform Commercial Code. Red River Commodities Inc. v. Eidsness, 459 N.W. 2d 811, 814 (N.D. 1990). In a commercial contest a written agreement may be explained or supplemented by course of dealing, course of performance or usage of trade. Smith Enterprises Inc. v. In-Touch Phone Cards, Inc. 685 N.W.2d 741, 744 (N.D. 2004). The course of dealing refers to the relationship between the parties and usage of the trade refers to the practice of the trade or industry. Tobias v. North Dakota Department of Human Services, 448 NW2d 175, 180 (N.D. 1989). Both terms are defined by statute. "A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a basis of understanding for

interpreting their expressions and other conduct." N.D. Cent Code § 41-01-15 (1)(1965). "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question." N.D. Cent. Code § 41-01-15 (2) (1965). The statue by its language presupposes an agreement that requires explanation or clarification.

While this issue has not been addressed by the North Dakota Supreme Court, courts in other jurisdictions hold that evidence of custom and usage cannot be used to create or imply a contract but only to clarify and explain the terms of an existing contract. For example the United States Court of Appeals for the First Circuit, interpreting Rhode Island law, rejected a plaintiff's course of dealing theory, finding the parties unbroken succession of written contracts that spanned approximately twenty years, provided no basis for continuation of a dealership in subsequent years when the retailer refused to sign the dealer sales agreement. N.E. Alpine Ski Shops, Inc. v. U.S. Divers Co. Inc., 898 F.2d 287, 290 (1st Cir. 1990). Likewise in Keith Equipment Co. v. Casa Grande Cotton Finance Co. the Arizona Court of Appeals held that while a course of dealing may establish a basis of understanding for interpretation of expressions and conduct, such a course of dealing does not create a contract, 928 P.2d 683, 686 (Ariz. App. 1996). *See also* Wendling v. Puls, 610, P.2d 580, 585 (Kan. 1980)(Custom and usage cannot be shown to to create a contract where non existed , but rather its use is restricted to the explanation of technical or trade terms in a contract). The evidence of the fashion in which Tri-Campbell had dealt with Simplot and the other growers in past years might well be relevant to explain the existing written contracts between the parties, but it does not create an agreement where none existed before.

Tri-Campbell also submits the example of a Simplot competitor, Frito Lay, who apparently at the same time as these events occurred, tapered off its use of dry-land Shepody potatoes to work through the supply pipeline. Courts have held that trade usage may give rise to an expectation that trade usage will be observed with respect to a transaction before the court, but it cannot create a contract or give rise to the meeting of the minds necessary to create a contract. Love v. Gamble, 448 SE2d 876, 880 (S.C. App. 1994). In Love a cucumber grower sued a cucumber buyer and pickle manufacturer with whom the grower had several previous one year contracts to supply cucumbers. The court reasoned that it knew of no authority for the proposition that custom and usage alone can imply a contract or give rise to the necessary meeting of the minds to imply a contract in subsequent years. Id at 880. *See also,* Cairnes & Associates, Inc.v. Conopco, Inc., __B.R. __, 2007 W.L. 2234765 (Bkrtcy. S.D. N.Y. 2007). Roskamp Manley Associates, Inc. v. Davin Dev. and Inv. Co. 229 Cal.Rptr. 186, 190 (App. 1986). The court thus declines to imply a contract based either on Tri-Campbell's past dealings with Simplot and the other growers or with regard to Frito Lay's business practices.

Simplot also seeks summary judgment on count four relating to the application of chapter 15-51-02. That section is North Dakota's version of a consumer sales fraud prevention act.. The act prohibits "the act, use or employment by any person of any deceptive act or practice, fraud, false pretense or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise...' N.D. Cent.Code §51-15-02. The North Dakota Supreme court has affirmatively answered a certified question from this court finding the section applicable to a transaction in which a farmer purchased sunflower seed for use in cultivating a crop for subsequent sale. Jorgenson v. Agway, Inc., 627 N.W.2d 391, 392 (N.D. 2001).

Whether the act has application in the alleged fraudulent purchase of farm commodities, such as the failure to exercise good faith in the rejection of allegedly non-conforming potatoes for processing has not been answered. Thus the act has possible application in the context of the sale or advertisement of merchandise, including agricultural commodities.

**Conclusion and Order**

The court believes that factual issues exist with regard to the remaining claims and counterclaims in this matter. Thus to the extent that the act might apply to claims in violation of the consumer fraud act summary judgment on count four is **denied**. To the extent the act applies to the unjust enrichment, quasi contract, or implied contract claim as set out above the motion for partial summary judgment is **granted**.

Dated this 11th day of October, 2007.

*/s/ Ralph R. Erickson*
Ralph R. Erickson, District Judge
United States District Court